# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JESSE LOPEZ, ) <br> ) <br> Petitioner, ) <br> v. ) <br> ) <br> TARRY WILLIAMS, Warden, ) <br> Western Illinois Correctional Center, ) <br> ) <br> Respondent. ) | No. 13 C 6556 <br> Hon. Marvin E. Aspen |

## MEMORANDUM OPINION AND ORDER

Presently before us is a pro se motion pursuant to 28 U.S.C. § 2254 to vacate, set aside or correct the sentence rendered against Jesse Lopez ("Petitioner") on May 30, 2008. For the reasons set forth below, we deny Petitioner's request for habeas relief.

## BACKGROUND AND PROCEDURAL HISTORY

We begin with a review of the factual background of Petitioner's conviction and the procedural history of his appeal.

### I. Lopez's Conviction

After a bench trial, Petitioner was convicted of armed violence, aggravated battery with a firearm, and aggravated discharge of a firearm. (*See* Dkt. 13, State Ct. R., Ex. J, Postconviction Rule 23 Order.) In discovery, the State of Illinois disclosed a recording device used by informant Blake Pannell, who was a cooperating witness for the State during Petitioner's trial. (Dkt. 12, Ans. at 2.) The State also revealed that, in exchange for his cooperation, Pannell received financial assistance, vacation of his outstanding felony convictions, and dismissal of pending criminal charges. (*Id.* at 2–3.)

1

During Petitioner's trial, Pannell testified that both he and Petitioner were members of the Latin King Disciples gang. (*Id*. at 3, 5.) During his testimony, the State played recordings of conversations between Pannell and fellow Latin King members, including a recording of a conversation that discussed the shooting of Marcus Randle. Pannell testified that the voices recorded by the overhear device included his own, Petitioner's, and that of a fellow gang member, Chavez Saulsberry. (*Id*.) Pannell identified the voice that admitted to shooting Randle as Petitioner's. (*Id*.) Pannell also testified that he agreed to assist the Federal Bureau of Investigation, the Kane County State's Attorney, the Kane County Sherriff's Office, and the Aurora Police in their ongoing investigations into crimes by the Latin Kings. (*Id*. at 3–4.) In exchange for his cooperation, Pannell explained that he was given financial assistance to move out of state, received a vacated sentence on his burglary conviction, and received transactional immunity for an unrelated homicide. (*Id*. at 4, 6.) Also at trial, Randle and Aurora Police Department Patrolman David Sheldon, who responded to the shooting of Randle, testified for the State. Patrolman Sheldon testified that the description Randle gave of his shooter matched Petitioner's likeness. (State Ct. R., Ex. M, Trial Tr. at 190–92.)

Petitioner was found guilty on May 15, 2007. *People v. Lopez*, No. 2-08-0653. On October 24, 2007, the State's Attorney disclosed transcripts to Petitioner's counsel of Pannell's testimony to a federal grand jury. (State Ct. R., Ex. M, Trial Tr. at 408–11.) This testimony was independent of Petitioner's prosecution and was part of law enforcement's ongoing investigation into the Latin Kings. (*Id*.) In this testimony, Pannell revealed his involvement in additional violent crimes that were not disclosed during Petitioner's bench trial and additional financial assistance that he received from the federal government for his cooperation. (*Id*.) In response, Petitioner, on November 20, 2007, filed a revised posttrial motion for a new trial and argued that

the State had violated *Brady v. Maryland*, 373 U.S. 83, 87–88, 83 S. Ct. 1194, 1197 (1963) by failing to provide Petitioner with Pannell's grand jury testimony earlier, which could have been beneficial to Petitioner's defense at trial. (State Ct. R., Ex. M, Trial Tr. at 407.) On May 9, 2008, the trial court denied Petitioner's request for a new trial, finding that the testimony was immaterial and would not have changed the outcome of Petitioner's trial. (*Id.* at 412–16.) On May 30, 2008, Petitioner was sentenced to twenty-two years in prison. (*Id.* at 460.)

## II.     Direct Appeal

On July 24, 2009, Petitioner filed an appeal to the Illinois Appellate Court. (State Ct. R., Ex. A, Pet'r Direct Appeal Br.) In this appeal, Petitioner raised one claim: that the State violated *Brady* by failing to disclose Pannell's grand jury testimony at trial. (*Id*. at 14.) On May 3, 2010, the Illinois Appellate Court affirmed the trial court's decision that the grand jury testimony was not material. (*See* State Ct. R., Ex. D, PLA at ii.) Petitioner then raised the same *Brady* claim in his petition to leave for appeal ("PLA"), which the Illinois Supreme Court denied on September 29, 2010. (*Id.*; State Ct. R., Ex. E, Order Denying PLA.)

## III.    State Postconviction Proceedings

Petitioner filed a postconviction petition on May 20, 2011. (State Ct. R., Ex. F, Postconviction Pet.) In this petition, Petitioner raised several additional claims. On postconviction appeal, however, Petitioner raised only one claim: that his direct appeal counsel was ineffective for failing to argue that the trial court erred in failing to orally impose his term of Mandatory Supervised Release ("MSR") at the sentencing hearing. (State Ct. R., Ex. G, Pet'r Postconviction Br.; State Ct. R., Ex. I, Pet'r Postconviction Reply Br.) The Illinois Appellate Court later dismissed Petitioner's claim. (State Ct. R., Ex. J, Postconviction Rule 23 Order.) Petitioner raised the same issue in his postconviction PLA, which the Illinois State Supreme

Court denied on May 29, 2013. (State Ct. R., Ex. K, Postconviction PLA; State Ct. R., Ex. L, Order Denying Postconviction PLA.)

## IV. Federal Habeas Petition

On September 6, 2013, Petitioner filed a federal habeas petition asserting the following claims:

**Claim 1.** The State violated *Brady* by failing to disclose Pannell's grand jury testimony.

**Claim 2**. Petitioner's trial counsel was ineffective for failing to challenge Pannell's identification of Petitioner's voice on the overhear recording, and for failing to adequately argue the *Brady* claim in the posttrial motion.

**Claim 3**. The State deprived him of his due process rights by mentioning an unrelated collateral crime during his initial trial.

**Claim 4**. The trial court violated Petitioner's constitutional rights when it allowed the prosecutors to reference the unrelated crime, denied the *Brady* claim, failed to sentence petitioner to MSR, and failed to inform Petitioner that the court had given Pannell immunity.

**Claim 5**. Petitioner's direct appeal counsel was ineffective for failing to claim that the trial counsel was ineffective, for failing to claim the State erred in referencing the unrelated murder claim, and for failing to raise both the MSR issue and the *Brady* issue.

**Claim 6**. The trial court failed to sentence Petitioner to MSR and therefore violated the separation of powers and deprived him of due process.

Because Petitioner's case has gone through both direct appeal and a postconviction petition, Petitioner has exhausted his state court remedies for his habeas claims. *See* 28 U.S.C. § 2254(c). This petition is timely.

# PROCEDURAL DEFAULT

## I. Standard of Review

For us to review a claim for a writ of habeas corpus on the merits, the petitioner must exhaust state court remedies and avoid procedural default. 28 U.S.C. § 2254(b)(1); *Rosario v. Akpore,* 967 F. Supp. 2d 1238, 1246 (N.D. Ill. 2013) (citing *Perruquet v. Briley*, 390 F.3d 505, 513–15 (7th Cir. 2004)). To avoid procedural default, the petitioner must fairly present all of the claims included in his federal habeas petition in one complete round of the state court's appellate review. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 1732 (1999); *Lewis v. Sternes,* 390 F.3d 1019, 1026 (7th Cir. 2004) ("A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim."); *see also United States ex rel. Ojeda v. Harrington*, 11 C 5779, 2014 WL 2581320, at *7 (N.D. Ill. June 9, 2014). In addition, for a federal court to reach the merits of a habeas claim, the state court's judgment against the petitioner must not clearly rely on adequate and independent state procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S. Ct. 2546, 2553 (1991); *Lee v. Foster*, 750 F.3d 687, 693 (7th Cir. 2014).

## II. Analysis

With two exceptions, we are unable to reach the merits of Petitioner's claims because he procedurally defaulted them. For the reasons discussed below, we can address the merits only of Claim 1 (that the State violated *Brady*), and part of Claim 5 (that Petitioner was deprived of his rights because his MSR term was not read at his sentencing).

**A. Unless Petitioner can excuse his defaults, Claims 2, 3, and 6, as well as parts of Claim of 5, are procedurally defaulted because petitioner did not raise them in a full round of state court proceedings.**

As is clear from the record, most of Petitioner's claims are defaulted because he did not present them to the state court through a complete round of appellate review. *See Boerckel*, 526 U.S. at 845. Claims 2, 3 and 4 are defaulted because Petitioner raised them only in his initial state postconviction petition and federal habeas petition. (State Ct. R., Ex. G, Pet'r Postconviction Br.; Dkt. 1, Pet. at 8–9, 23–26.)

Petitioner has also defaulted aspects of Claim 5. Indeed, Petitioner raised several discrete arguments in his postconviction petition, (State Ct. R., Ex. F, Postconviction Pet.), but failed to renew them in his postconviction appeal and PLA to the Illinois Supreme Court, (State Ct. R., Ex. G, Pet'r Postconviction Br.; State Ct. R., Ex. K, Postconviction PLA). These three arguments—specifically, that direct appeal counsel was ineffective: (1) for failing to claim that the trial counsel was ineffective; (2) for failing to claim the State erred in referencing the unrelated murder claim; and (3) for failing to raise the *Brady* issue—appear in Claim 5 but cannot stand.

Lastly, we cannot reach Claim 6 on the merits because Petitioner also failed to properly present it to the state court. In his federal habeas petition, Petitioner claims the trial court failed to sentence him to MSR at the hearing and therefore violated the separation of powers and deprived him of his due process rights. (Pet. at 32.) This argument, however, was not made in any of Petitioner's state proceedings. (*See* State Ct. R., Exs. A, D, F, G, K.) Instead, in each step of the postconviction appeal process, Petitioner argued that direct appeal counsel was ineffective for failing to raise the MSR claim. (*See* Pet. at 10; State Ct. R., Exs. F, G, K.) The Seventh Circuit has found that, for the purposes of determining whether a state court has had a

fair chance to review a claim, there is a meaningful difference between a claim that petitioner's constitutional rights were denied and a claim that petitioner's right to effective counsel was denied because petitioner's counsel failed to raise certain claims. *See Lewis*, 390 F.3d at 1026. As the Seventh Circuit has explained, "[a] meritorious claim of attorney ineffectiveness might amount to cause for the failure to present an issue to a state court, but the fact that the ineffectiveness claim was raised at some point in state court does not mean that the state court was given the opportunity to address the underlying issue that the attorney in question neglected to raise." *Id.*; *Sweeney v. Carter,* 361 F.3d 327, 333 (7th Cir. 2004) ("We have found that the fact that two different claims arise from a common set of facts is not enough to avoid default."). Petitioner's claim that the trial court violated his constitutional rights is substantively different from the issue of ineffective assistance of counsel for failing to challenge that claim. Thus, Claim 6 was not properly presented in state court and is procedurally defaulted.

In his reply, Petitioner acknowledges that he did not argue these claims in a complete round of state court proceedings. (Dkt. 15, Reply at 5.) He claims that he asked his direct appeal counsel to raise several additional claims but counsel refused. (*Id*. at 6.) Petitioner also points out that several of his procedurally defaulted claims were raised in the first round of his postconviction petition, but he was unaware that these claims also needed to be raised in his postconviction appeal and PLA. (*Id*.) He thus attempts to excuse his defaulted claims, a separate question to which we now turn. (*Id*. at 5–7.)

**B. Petitioner cannot excuse his procedurally defaulted claims.**

To overcome a procedural default, the petitioner must show: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law;" or (2) that the default

7

"would lead to a 'fundamental miscarriage of justice.'" *Coleman*, 501 U.S. at 750, 111 S. Ct. at 2655; *see also Lewis*, 390 F.3d at 1026.

### i. Petitioner failed to show cause and prejudice for his defaulted claims.

Under a cause and prejudice analysis, "cause for a default is ordinarily established by showing that some type of external impediment prevented the petitioner from presenting his federal claim to the state courts." *Lewis*, 390 F.2d at 1026 (citing *Murray v. Carrier*, 477 U.S. 478, 495–96, 106 S. Ct. 2639, 2645 (1986)). In his habeas petition, Petitioner failed to argue that his claims were excusable. In his reply, Petitioner articulates three main arguments to excuse his procedurally defaulted claims. First, Petitioner contends that he did not have knowledge of the law—that he was unaware of the procedural requirements for a habeas petition and therefore neglected to present them in a complete round of state proceedings. (Reply at 6–7.) Ignorance of the law, however, is not sufficient cause to excuse an otherwise procedurally defaulted claim. *See, e.g.*, *Smith v. McKee,* 598 F.3d 374, 385 (7th Cir. 2010) ("This court has specifically rejected the argument that a petitioner's pro se status alone constitutes cause in a cause-and-prejudice analysis."); *U.S. ex rel. Harris v. Cowan*, 96 C 7026, 2002 WL 27411, at *5 (N.D. Ill. Jan. 9, 2002) ("Petitioner cannot rely on his alleged low IQ, limited reading skills or ignorance of the law as cause for the default.").

Second, Petitioner argues that his direct appeal counsel was ineffective because she failed to tell Petitioner that he needed to raise each claim in a complete round of state proceedings. (Reply at 8.) Ineffective assistance of counsel may, in some circumstances, constitute cause for a procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S. Ct. 1587, 1591 (2000); *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008). As the Supreme Court explained in *Murray*, "the exhaustion doctrine, which is [designed to further the principle of comity] . . .

generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." 477 U.S. at 489, 106 S. Ct. at 2646; *Edwards,* 529 U.S. at 451–52, 120 S. Ct. at 1591; *see also Morrison v. Duckworth,* 898 F.2d 1298, 1300 (7th Cir. 1990); *U.S. ex rel. Brown v. Dillon*, 872 F. Supp. 485, 487–88 (N.D. Ill. 1994). If an ineffective counsel claim has not been presented to the state court, a federal habeas court reviewing such a claim for exhaustion purposes would be depriving the state court of its "opportunity . . . to correct a constitutional violation." *Murray*, 477 U.S. at 489, 106 S. Ct. at 2646 (internal citation omitted) ("[T]he federal habeas court would find itself in the anomalous position of adjudicating an unexhausted constitutional claim for which state court review might still be available."); *Dillon*, 872 F. Supp. at 487–88.

Here, although Petitioner asserted ineffective assistance of counsel claims in his postconviction appeal, he did not claim that his counsel was constitutionally ineffective for failing to advise him on the procedural aspects of the appeal process, as articulated here. Because he neglected to present this particular ineffective assistance issue to a state court, we may not consider it as cause to cure Petitioner's defaulted habeas claims. *Murray*, 477 U.S. at 489, 106 S. Ct. at 2646.

In his third attempt to excuse his defaulted claims, Petitioner argues that his postconviction counsel was ineffective. Ineffective postconviction counsel cannot be used as sufficient cause to overcome a procedurally defaulted claim, however, because there is no constitutional right to postconviction counsel. *See Coleman*, 501 U.S. at 752–53; *Neal v. Gramley*, 99 F.3d 841, 843 (7th Cir. 1996). Petitioner has failed to show sufficient cause, and therefore we find that he cannot fulfill the "cause and prejudice" prong to overcome his

procedurally defaulted claims. *See Engle v. Isaac*, 456 U.S. 107, 134, 102 S. Ct. 1558, 1575 (1982).

      **ii.    Petitioner has not shown a fundamental miscarriage of justice.**

Petitioner does not explicitly claim that our enforcement of his default would result in a fundamental miscarriage of justice. To the extent that his petition inherently includes such an argument, we shall briefly address it. *See, e g.*, *Dillon*, 872 F. Supp. at 492.

To demonstrate a fundamental miscarriage of justice, Petitioner "must convince the court that no reasonable juror would have found him guilty but for the error(s) allegedly committed by the state court." *Perruquet*, 390 F.3d at 515 (explaining that, in that event, the petitioner must show "that he is actually innocent of the crime for which he was convicted") (citing *Schlup v. Delo*, 513 U.S. 298, 327–29, 115 S. Ct. 851, 867–869 (1995)). Although Petitioner claims generally that he is innocent, nothing in the record before us suggests the state court wrongly convicted him or that a miscarriage of justice has occurred. Petitioner has not shown that his situation constitutes "an extraordinary case" that would warrant excuse of his procedurally defaulted claims. *Murray*, 477 U.S. at 496, 106 S. Ct. at 2649.

## MERITS

We turn then to consider the merits of Petitioner's two non-defaulted claims. As discussed in detail below, Claim I rests on an alleged *Brady* violation. In Claim 5, Petitioner challenges the effectiveness of his appellate counsel, who failed to contest the trial court's omission of the mandatory MSR term during the sentencing hearing.

**I.    Standard of Review**

Pursuant to 28 U.S.C. § 2254, a court may issue a writ of habeas corpus after a state court judgment only where the petitioner "is in custody in violation of the Constitution or laws or

treaties of the United States." 28 U.S.C. § 2254(a).  To succeed on a habeas claim, Petitioner must show that the state court's judgment (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 363, 404–05, 120 S. Ct. 1495, 1519 (2000); *Morgan v. Hardy*, 662 F.3d 790, 797 (7th Cir. 2011).

A state court's decision is "contrary" to Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [it]."  *Williams*, 529 U.S. at 405, 120 S. Ct. at 1519; *see Morgan*, 662 F.3d at 797; *Woods v. McBride*, 430 F.3d 813, 816–17 (7th Cir. 2005).  To be considered an "unreasonable application" of federal law, a state court's application of federal law must be more than incorrect or erroneous; it must be "objectively" unreasonable.  *Williams,* 529 U.S. at 410, 120 S. Ct. at 1522 (finding that "a federal habeas court may not issue the writ simply because that court concludes . . . that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."); *see also Morgan,* 662 F.3d at 797.  For a federal court to find a state court judgment unreasonable under this standard, it must lay "well outside the boundaries of permissible differences of opinion."  *Hardaway v. Young,* 302 F.3d 757, 762 (7th Cir. 2002); *Henderson v. Briley*, 354 F.3d 907, 909 (7th Cir. 2004).

## II. Analysis

### A. Claim 1: Did the state violate *Brady* by failing to disclose Pannell's grand jury testimony?

In Claim I, Petitioner contends that the state court misapplied *Brady* when construing his claim that the prosecution improperly withheld Pannell's grand jury testimony. In *Brady*, the United States Supreme Court held that due process requires the prosecution to provide the defense with "any evidence favorable to the accused which is material either to guilt or punishment." *Brady,* 373 U.S. at 87–88, 83 S. Ct. at 1197; *see also United States v. Gonzalez*, 93 F.3d 311, 315 (7th Cir. 1996); *United States v. Veras*, 51 F.3d 1365, 1374 (7th Cir. 1995). To prevail under *Brady*, a petitioner must prove "three elements: 1) that the evidence in question was favorable, 2) the evidence was suppressed, and 3) the evidence was material to the case." *United States v. Ducato*, 968 F. Supp. 1310, 1314–15 (N.D. Ill. 1997); *United States v. Cusimano*, 148 F.3d 824 (7th Cir. 1998) (citing *United States v. Dimas,* 3 F.3d 1015, 1017 (7th Cir. 1993)). "It matters not whether the defense requested the information or the government's failure was inadvertent; the government's duty is to turn over all exculpatory information in its possession." *Goudy v. Basinger*, 604 F.3d 394, 399 (7th Cir. 2010) (citing *United States v. Agurs,* 427 U.S. 97, 106–07, 96 S. Ct. 2392, 2398–99 (1976)).

Although the State admits that it suppressed the grand jury testimony, Petitioner's *Brady* claim fails because he cannot show that the testimony was material to the outcome of his trial. Petitioner contends that, had Pannell's grand jury testimony been disclosed, he would have changed his "trial strategies such as choosing a jury trial instead of a bench trial" and could have used the evidence to "damage the credibility" of Pannell as a witness. (Pet. at 9.) To sufficiently prove materiality, Petitioner must show that if the State turned over Pannell's testimony before the State trial court entered its judgment against Petitioner, there is a "reasonable probability"

12

that the disclosure of the transcript would have changed the course of the trial, such that it "undermines confidence in the outcome of the trial." *Kyles v. Whitley*, 514 U.S. 419, 432, 437, 115 S. Ct. 1555, 1561, 1567 (1995); *Crivens v. Roth*, 172 F.3d 991, 996–97 (7th Cir. 1999). Petitioner argues that Pannell's testimony would have changed the outcome of his trial because Pannell would have been impeached if the court knew of Pannell's additional criminal behavior. (*See* Pet. at 9, 15–19.)

Although the *Brady* doctrine prevents the government from withholding impeachment evidence, the evidence must be pertinent for "'more than cumulative impeachment.'" *United States v. Kozinski*, 16 F.3d 795, 819 (7th Cir. 1994) (quoting *United States v. Dweck*, 913 F.2d 365, 371 (7th Cir. 1990)); *see United States v. Bagley*, 473 U.S. 667, 676–77, 105 S. Ct. 3375, 3379–80 (1985); *Giglio v. United States*, 405 U.S. 150, 154, 92 S. Ct. 763, 31 (1972); *United States v. Dabney*, 498 F.3d 455, 459 (7th Cir. 2007). Here, the record included ample evidence of Pannell's serious criminal history, as well as the benefits he received for his cooperation with the prosecution. This evidence was submitted to the trial court during the trial, including evidence that the government gave Pannell immunity for his involvement in homicides. (State Ct. R., Ex. M, Trial Tr. at 115.) Because the trial court knew about Pannell's felonious history and potential motives for testifying, Petitioner has not shown a reasonable probability that Pannell's additional criminal record would have changed the outcome of the trial.

Even if the evidence could be deemed additionally useful for impeachment purposes, Petitioner nonetheless cannot establish that the grand jury testimony was material because parts of Pannell's trial testimony were corroborated both by Randle's testimony, (State Ct. R., Ex. M, Trial Tr. at 83–93), and by Patrolman Sheldon's testimony, (*id.* at 185–95). As the Seventh Circuit explained in *United States v. Wilson*, "[u]ndisclosed impeachment evidence would not

13

produce a different result if the testimony of the witness against whom it is offered was strongly corroborated by other evidence." 481 F.3d 475, 481 (7th Cir. 2007) (collecting cases); *see also Bagley*, 473 U.S. at 689, 105 S. Ct. at 3387 ("If the testimony that might have been impeached is weak and also cumulative, corroborative, or tangential, the failure to disclose the impeachment evidence could conceivably be held harmless."); *Conley v. United States*, 415 F.3d 183, 189–90 (1st Cir. 2005) (finding that the impeachment evidence was material because the witness provided the only credible evidence against defendant). The corroborating testimony presented at Petitioner's trial further illustrates that Pannell's grand jury testimony was not material to his conviction. Even if the grand jury testimony could have been used to impeach or discredit Pannell, the prosecution relied on other evidence at trial that showed Petitioner's involvement in the shooting. As such, Petitioner failed to satisfy the elements of a *Brady* claim.

In sum, we find that the state court reasonably concluded that disclosure of Pannell's additional criminal record at trial would not have changed the outcome of Petitioner's trial. Because the state court did not unreasonably apply federal law when it decided Petitioner's *Brady* claim, Petitioner is not entitled to relief on Claim 1.

**B. Claim 5: Was counsel on direct appeal ineffective for failing to argue that the trial court violated Petitioner's rights by failing to impose MSR at the hearing?**

Petitioner argues that his counsel was ineffective because she neglected to argue on direct appeal that the trial court acted unconstitutionally when it failed to mention Petitioner's MSR term at Petitioner's sentencing. (Pet. at 10.) The United States Supreme Court, in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), established a two-pronged test for reviewing an ineffective assistance of counsel claim. *See also Walker v. Litscher*, 421 F.3d 549, 558 (7th Cir. 2005). First, "the defendant must show that the counsel's representation fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688, 104 S. Ct. at 2064. This

prong requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687, 104 S. Ct. at 2064. Second, the defendant must establish that he was prejudiced by his counsel's ineffective representation by showing a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694, 104 S. Ct. at 2068.

The "bar for establishing that a state court's application of *Strickland* was 'unreasonable' is a high one." *Murrell v. Frank*, 332 F.3d 1102, 1111 (7th Cir. 2003) (citing *Dixon v. Snyder*, 266 F.3d 693, 700–01 (7th Cir. 2001)); *see Strickland*, 466 U.S. at 687–88, 104 S. Ct. at 2052; *Walker*, 421 F.3d at 558 (noting that habeas petitioners face a heavy burden when proving prejudice). The *Strickland* analysis includes "an element of deference to counsel's choices in conducting the litigation [while] § 2254(d)(1) adds a layer of respect for a state court's application of the legal standard." *Holman v. Gilmore*, 126 F.3d 876, 881 (7th Cir. 1997); *see also Whitehead v. Cowan*, 263 F.3d 708, 731 (7th Cir. 2001). "*Strickland* calls for inquiry into degrees; it is a balancing rather than a bright-line approach. . . . This means that only a clear error in applying Strickland's standard would support a writ of habeas corpus." *Holman*, 126 F.3d at 881.

Beyond the deference inherent in the *Strickland* analysis, we bear in mind that appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288, 120 S. Ct. 746, 765 (2000) (citing *Jones v. Barnes*, 463 U.S. 745, 750–54, 103 S. Ct. 3308, 3312–14 (1983)). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Smith*, 528 U.S. at 288, 120 S. Ct. at 765 (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)).

Consistent with these principles, Petitioner has failed to overcome the presumption that his appellate counsel was effective and that the state court correctly applied the *Strickland* standard. The state court properly concluded that counsel was not ineffective for failing to raise the MSR issue on appeal because Petitioner could not have succeeded on the claim even if it had been raised. (*See* State Ct. R., Ex. J, Postconviction Rule 23 Order at 4–6.) The Seventh Circuit recently addressed this underlying question in *Carroll v. Daugherty*, 764 F.3d 786 (7th Cir. 2014). In *Carroll*, a federal habeas petitioner, also convicted in Illinois, argued that the state court violated his constitutional rights by failing to inform him of the MSR term, either at sentencing or in the judgment. *Id*. at 787. The Seventh Circuit stated that "[b]ecause Illinois's statute made supervised release mandatory, the omission of supervised release from the judgment did not make the sentence unlawful." *Id*. at 788 (further noting that "there [was] no room for the exercise of discretion"); *People v. Horrell*, 235 Ill.2d 235, 242–43, 919 N.E.2d 952, 957 (Ill. 2009) (reiterating that term of MSR is mandatory after every sentence); *Holly v. Montes*, 231 Ill.2d 153, 165–66, 896 N.E.2d 267, 275 (Ill. 2008); *see* 730 ILCS 5/5-8-1(d). Because the trial court had no choice about whether to include an MSR term, counsel's failure to raise the claim would not have resulted in a different outcome. Thus, the state appellate court correctly applied the *Strickland* standard to dismiss Petitioner's ineffective assistance of counsel claim.

## CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c)(1), a certificate of appealability ("COA") is required for an appeal from a final order in a habeas corpus proceeding under 28 U.S.C. § 2254. *See* 28 U.S.C. § 2253(c). We may grant a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Walker v. O'Brien*, 216 F.3d 626, 631–32 (7th Cir. 2000). To show that his constitutional rights have been

denied, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessments of the constitutional claims debatable or wrong," or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1603–04 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4, 103 S. Ct. 3383, 3395 (1983)). For claims that the district court dismissed on procedural grounds, it should issue a COA only "when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484, 120 S. Ct. at 1604.

Here, reasonable jurists could not debate our conclusion with respect to the majority of Petitioner's claims, which we have dismissed on procedural grounds. Petitioner did not properly present these claims to the Illinois court, and we have no basis to excuse his default. To reach the merits of those defaulted claims would undermine the procedural protections in place for ensuring a federal court's deference to state court proceedings. *Murray*, 477 U.S. at 489, 106 S. Ct. at 2646.

Similarly, no reasonable jurist could disagree with our analysis of the merits on Claims 1 and 5. As addressed above, clear precedent dictates the outcome of Petitioner's claims: the additional criminal behavior of a witness is not material under *Brady* under these circumstances, and an individual convicted in Illinois is not constitutionally entitled to have his MSR term announced at sentencing. For these reasons, Petitioner has not made a substantial showing of the denial of a constitutional right, as necessary for us to issue a COA. *Slack*, 529 U.S. at 484, 120 S. Ct. at 1604.

## CONCLUSION

For the reasons stated above, Petitioner's habeas petition is denied. We also decline to issue a certificate of appealability. It is so ordered.

_____
MARVIN E. ASPEN
United States District Court Judge

Date: November 4, 2014
Chicago, Illinois